UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| NORTH STAR MUTUAL INSURANCE COMPANY, AS SUBROGEE FOR KYLAN MEIER, | ) ) ) ) | CIV. 11-4133-KES |
| Plaintiff, | ) ) ) | ORDER DENYING DEFENDANT CNH AMERICA LLC'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS AND MOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) ) | |
| CNH AMERICA LLC, a Delaware limited liability company, | ) ) ) | |
| Defendant. | ) | |

Defendant, CNH America LLC (CNH), moves for exclusion of the expert witness for plaintiff, North Star Mutual Insurance Company, and for summary judgment. North Star, as subrogee for its insured, Kylan Meier, resists CNH's motion for summary judgment.

**BACKGROUND**

Kylan and Al Meier both purchased 2010 Case IH AF9120 combines from Titan Machinery in the fall of 2009. Docket 39 at 2.[1] Both machines were delivered in June 2010 for use in the fall harvest. *Id.* The first time Kylan operated the combine, stripper plates came loose and ran through the combine,

---

[1] For clarity, the court will refer to Kylan Meier's combine as the combine and to Al Meier's combine as the exemplar combine.

causing substantial damage. Docket 36 at 2; Docket 39 at 3.[2] Titan sent an employee to make temporary repairs to the combine so Kylan could finish his winter wheat harvest. Docket 36 at 2-3. Following that harvest, Kylan brought the combine to Titan for more extensive repairs. *Id.* at 3. After the combine was repaired, one of the Meiers noticed that some nuts and bolts were missing, and personally replaced them. *Id.* In September of 2010 the Meiers replaced four chopper blades that had broken off. *Id.*

The combine caught fire late in the day on October 8, 2010, while Kylan was harvesting soybeans near Virgil, South Dakota. Docket 36 at 3; Docket 39 at 3. Kylan stated that the monitor alarms went off and when he looked around he saw smoke coming out of the back of the combine. Docket 36 at 3, Docket 39 at 3. Another operator saw the smoke and came to help, but ultimately the two were unable to put out the fire. Docket 36 at 3-4, Docket 39 at 3-4. By the time the fire department arrived, the combine was destroyed. Docket 39 at 4.

Following the fire, a number of experts and forensic investigators examined the combine. On November 5, 2010, Jeffrey Wingfield and Chris Rallis on behalf of North Star, Robert Hawken on behalf of CNH, and Glenn Johnson on behalf of Titan all inspected the combine, interviewed Kylan, and

---

[2] A stripper plate is an adjustable metal plate that strips the ears of corn from the stalk. *Operator's Manual for Almaco SPC 40 Combine* C-5 *available at* http://www.almaco.com/ public/manuals/MOC040611CD.pdf (last visited Sept. 5, 2013).

took photographs. Docket 36 at 4. Next, the experts inspected the exemplar combine, but Hawken did not attend. Docket 36 at 4.

The investigation established that the cause of the fire was an accumulation of flammable crop debris in the combine's engine compartment, which came into contact with a hot surface, most likely the exhaust manifold or turbocharger, and ignited. Docket 39 at 4-5. The fire was intensified when the combine's fuel tank breached and the remaining diesel fuel added to the fire. *Id.*

At some point prior to the fire, the combine's engine compartment floor pan was punctured by a chopper blade that broke off, resulting in a hole roughly two inches long and 3/16 of an inch wide. Docket 36 at 19. A similar puncture was observed on the exemplar combine. Docket 34-12 at 4. Larry Hanke, an expert retained by North Star to examine the blade failure, concluded that the knife blade on the combine fractured due to fatigue. Docket 35-4 at 3. The record indicates that Titan replaced some, but not all, of the chopper blades on the combine in August 2010. Docket 34-12 at 6.

North Star paid Kylan pursuant to the terms of the insurance policy Kylan held on the combine. Docket 1 at 2. North Star then initiated this action against CNH and Titan. North Star and Titan reached a settlement, resulting in the dismissal with prejudice of all claims by North Star against Titan, and all counterclaims by Titan against North Star. Docket 57. North Star still asserts

3

the following claims against CNH: Count I, strict liability based on a dangerous and defective design; Count II, negligence based on defective design and inadequate warning; Count III, breach of an express warranty that the combine was free from defects; and Count IV, breach of the implied warranties of merchantability and fitness for a particular purpose.

CNH moves for exclusion of Wingfield as an expert in this matter and for summary judgment as a matter of law on all claims.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be . . . genuinely disputed must support the assertion" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the . . . presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A)-(B). The movant can also establish the absence of a disputed material fact by showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The burden is initially placed on the moving party to establish the absence of a genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary

judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In determining whether a genuine issue for trial exists, the court applies the standard and burden associated with the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]").

South Dakota substantive law applies to CNH's claims because this case is before the court on the basis of diversity. *Hammonds v. Hartford Fire Ins. Co.*, 501 F.3d 991, 996 n.6 (8th Cir. 2007) ("We apply South Dakota substantive law because this diversity action was brought in the District of South Dakota, and the district court sitting in diversity applies the substantive law of the state

in which it is located." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938))). Federal law governs the admissibility of expert testimony in diversity cases, so the court applies the federal standard for admissibility. *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (citing *Clark v. Heidrick*, 150 F.3d 912, 914 (8th Cir. 1998)). Federal Rule of Evidence 702 provides that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

## ANALYSIS

### I. Admissibility of Wingfield's Testimony

CNH contends that Wingfield's expert testimony is inadmissible. The Eighth Circuit has adopted a three-part test to determine the admissibility of expert testimony:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires . . . .

*Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001). CNH argues that Wingfield does not satisfy the *Lauzon* test because he is not qualified as a combine expert and because he did not test or prototype his design alternatives. As a result, CNH argues that Wingfield's testimony is not useful to the finder of fact.

### A. Wingfield's Qualifications

Under the second prong of the *Lauzon* test, an expert must be qualified to assist the finder of fact. CNH argues that because "Wingfield has not designed component parts of heavy machinery for over five years, he lacks a basic working knowledge of the operation of a combine, his design experience is limited to heavy trucks, not agricultural equipment, and Wingfield has never designed a combine or its component parts . . . ," he should be excluded from offering expert testimony in this case. Docket 52 at 12. CNH further states that Wingfield's title as an engineer does not alone qualify him as an expert. *Id.* North Star points to Wingfield's experience designing heavy trucks and industrial equipment, his education, and his familiarity with generally accepted engineering principles. Docket 39 at 7-12.

Under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the court serves as a gatekeeper to ensure that a witness is qualified as an expert. *Shuck v. CNH America, LLC*, 498 F.3d 868, 874 (8th Cir. 2007). " '[FRE] 702 reflects an attempt to liberalize the rules governing the

admission of expert testimony.' " *Id.* (citing *Lauzon*, 270 F.3d at 686). " 'The rule clearly is one of admissibility rather than exclusion.' " *Id.* (citing *Lauzon*, 270 F.3d at 686) (internal quotations omitted).

The court finds that Wingfield is qualified to assist the trier of fact in this case. He has extensive education, training, and experience in engineering principles that are relevant to the inquiry at hand. Docket 34-11 (Wingfield's curriculum vitae); Docket 34-3 at 7 (describing Wingfield's education); Docket 39 at 8, 10. Furthermore, Wingfield has demonstrated familiarity with the operation of combines. Docket 34-3 at 7-8 (describing the operation of a combine).

CNH emphasizes Wingfield's lack of experience designing combines or any component specifically used on a combine. Docket 52 at 12 ("Wingfield is an engineer, but he has no experience servicing, maintaining, installing component parts, operating, or designing combines."). The court disagrees that Wingfield may only testify as an expert if he has experience specifically on combines. Fed. R. Evid. 702 and *Daubert* do not require that an expert have design experience on the exact product in question. *Doblar v. Unverferth Mfg. Co.*, 981 F. Supp. 1284, 1287 (D.S.D. 1997) ("The Court concludes that Mr. Adams's testimony is . . . valid and will aid the jury . . . . Mr. Adams's opinions are the product of good academic training and extensive experience in commonly used design principles, even though he does not have specific

8

experience with regard to gravity grain boxes. Mr. Adams need not actually have designed a gravity box to assist the jury in understanding the engineering principles at work."). Similarly, the court here finds that Wingfield's knowledge, skill, experience, training, and education qualify him to aid the jury with respect to the design principles at issue.

CNH also argues that Wingfield is not as qualified as its expert, CNH Chief Combine Engineer Jimmie Clifford. Docket 52 at 14; Docket 34-3 at 8. Clifford undoubtedly has extensive experience designing combines. But Clifford's qualifications do not exclude Wingfield from offering testimony. Wingfield does not need to be the foremost expert on combines or have specifically designed the product at hand; indeed, such a requirement would eliminate most experts except those employed by CNH and its peers.

### B.  Wingfield's Proposed Design Alternatives

"To establish liability in negligence for defective product[,] . . . a plaintiff must show that the defendant failed to use the amount of care in designing . . . the product that a reasonably careful designer . . . would use in similar circumstances to avoid exposing others to a foreseeable risk of harm." *Burley v. Kytec Innovative Sports Equip., Inc.*, 737 N.W.2d 397, 407 (S.D. 2007) (citing Restatement (Second) Torts § 395). "To determine whether the designer . . . used reasonable care, one must balance what the designer . . . knew or should have known about the likelihood and severity of potential harm from the

9

product against the burden of taking safety measures to reduce or avoid the harm." *Id.* at 407 (citing Restatement (Second) Torts § 395).

"Whether a manufacturer know or should have known of a particular risk involves technical issues . . . which lie beyond the comprehension of most jurors." *Id.* Therefore, North Star must provide expert testimony to support a design defect, and such testimony "must be reliable or trustworthy in an evidentiary sense[.]" *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

Reliability relates to whether the reasoning and methodology underlying the testimony is scientifically valid. Some of the factors a court may consider include "(1) whether the theory or technique 'can be (and has been) tested'; (2) 'whether the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) whether the theory has been generally accepted." *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 297 (8th Cir. 1996) (citing *Daubert*, 509 U.S. at 593-94). As recognized in *Daubert*, however, the Supreme Court did "not presume to set out a definitive checklist or test." 509 U.S. at 593.

CNH attacks Wingfield's reliability because he did not test his design alternatives to determine their feasability or utility. CNH relies primarily on decisions in *Peitzmeier*, *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076 (8th Cir. 1999), and *Unrein v. Timesavers, Inc.*, 394 F.3d 1008 (8th Cir. 2005). According

to CNH, these cases require an expert "to take some additional step to ensure the reliability of his opinions, whether it is preparing design drawings, implementing his proposed modifications into the product, or developing and testing prototypes." Docket 36 at 11. This court recently held that "[those] cases stand for the well accepted principle that an expert's opinion must be found by the court to be sufficiently reliable before it can be admitted into evidence." *Jensen v. Hy-Vee Corp.*, No. CIV. 09-4057-KES, 2011 WL 1832997 at *6 (D.S.D. May 13, 2011).

"An expert proposing safety modifications must demonstrate *by some means* that they would work to protect the machine operators but would not interfere with the machine's utility." *Unrein*, 394 F.3d at 1012 (emphasis added). An expert need not manufacture the new device or provide a prototype, but the opinion must be sufficiently grounded to be helpful to the jury. *Id.*

### 1. Engine Compartment Floor Pan

First, Wingfield opines that the combine should have had a thicker floor pan to prevent punctures that would allow crop debris into the engine compartment. Docket 34-12 at 9. CNH argues that Wingfield never tested his theory about the airflow of the crop debris, and that he has not tested the effectiveness of a thicker floor pan. Docket 36 at 19. North Star responds that Wingfield's opinion relies on generally accepted principles of engineering and is therefore reliable. Docket 39 at 21-23.

11

Wingfield did not test his theory or provide sketches or a prototype incorporating his alternative design for the floor pan. But Wingfield is not proposing to add a new part to the combine design—he is only suggesting that it be made differently. Docket 46-19 at 6. The idea that making a piece of metal thicker to increase its resistance to punctures is straightforward and sufficiently reliable to be presented to a jury. *See Jensen*, 2011 WL 1832997 at *6-7 (finding that straightforward theories satisfy the fourth *Daubert* factor).

Additionally, CNH faults Wingfield for not testing whether a puncture in the floor pan could result in accumulation of debris and for not calculating the air flow and pressure differentials involved. Docket 36 at 19-20. But Wingfield did observe the effect of a puncture in the floor pan of the exemplar combine. Docket 46-11 at 8. The use of an exemplar to confirm a hypothesis makes Wingfield's theory sufficiently reliable to be helpful to a jury.

### 2. Shielding Engine Components

Second, Wingfield opines that the combine's exhaust manifold and turbocharger should have been shielded somehow, and he indicated that the most effective method would be some type of insulating wrap. Docket 34-12 at 9. CNH contends that because Wingfield has not tested the effectiveness of the wrap on a combine, his proposed design alternative is not reliable. Docket 36 at 15-16. But Wingfield states that he has tested the effectiveness of the wrap on other types of diesel engines. Docket 46-19 at 4-5. While those engines were

not in a combine, the court finds that Wingfield's testing is reliable enough to determine if the wrap can reduce surface temperatures below the ignition point of crop debris.

Furthermore, Wingfield provided a list of combine manufacturers and other heavy equipment manufacturers that use a wrap to minimize the risk of fire. *Id.* Although Wingfield did not provide exact product lines, and he did not submit pictures of the wrapped engine parts, the court finds his testimony sufficiently grounded to be helpful to a jury. In addition, CNH's expert stated in his deposition with respect to other properties of fire wrapping that "[y]ou don't have to physically do the test to know the results." Docket 34-13 at 3. "When a litigant clearly believes a certain methodology is acceptable as shown by his or her own expert's reliance on that methodology, it is disingenuous to challenge an opponent's use of that methodology." *Shuck v. CNH America, LLC*, 498 F.3d 868, 874 (8th Cir. 2007). Because Wingfield has indicated that his proposed modifications are in use in other similar products, the court finds his opinions on the shielding of the exhaust system to be sufficiently grounded to assist a jury.

### 3. Fuel Tank

Third, Wingfield opines that a metal fuel tank would be less likely to rupture and add fuel to a fire than the plastic fuel tank on the combine. Docket 34-12 at 10. Wingfield performed no testing on the fire resistance of metal fuel

tanks, nor did he provide any drawings or prototypes incorporating a metal fuel tank into a combine. Nonetheless, the prevalence of metal fuel tanks in CNH's and other manufacturers' product lines supports the feasibility of Wingfield's proposed design alternative. Docket 46-19 at 3-4.

While Wingfield's report and proposed testimony do not satisfy every Daubert factor, Wingfield's opinions are sufficiently reliable to be helpful to a jury. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility . . . . Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *United States v. Countentos*, 651 F.3d 809, 820 (8th Cir. 2011) (citing *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002). Additionally, the Supreme Court recognized in *Daubert* that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). For these reasons, the court finds that Wingfield's testimony is sufficiently reliable. *Cf. Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("Thus, whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." (citation omitted)).

Ultimately, Wingfield has presented alternative designs. Reasonable minds could disagree about whether CNH properly balanced safety and utility in arriving at the design of the combine, or whether CNH should have incorporated some or all of Wingfield's proposed alternatives. The court leaves that issue for a jury to decide.

## II. Spoliation

CNH asserts that an adverse inference is warranted due to the alleged destruction of a short video of the fire on Kylan's cell phone. Docket 36 at 18-19. A court must find that four factors have been met before giving a spoliation instruction:

> An instruction on the inference that may be drawn from the spoliation of evidence is proper only when substantial evidence exists to support a conclusion that the evidence was in existence, that it was in the possession or under the control of the party against whom the inference may be drawn, that the evidence would have been admissible at trial, and that the party responsible for destroying the evidence did so intentionally and in bad faith.

*State v. Mulligan*, 736 N.W.2d 808, 822 (S.D. 2007) (citing *State v. Engesser*, 661 N.W.2d 739, 755 (S.D. 2003)). CNH argues that North Star admitted a video existed, that Kylan was on notice of the fire investigation, and that the video no longer exists; therefore, the deletion of the video must have been in bad faith. CNH has not provided substantial evidence that the video would have been relevant evidence. Additionally, CNH has not shown that North Star

intentionally and in bad faith destroyed the video. CNH has not met its burden on this issue.

### III. Implied Warranties

CNH asserts that it is entitled to summary judgment on North Star's claim of a breach of the implied warranties of merchantability and fitness for a particular purpose because the express warranty disclaimed the implied warranties. This argument is raised for the first time in CNH's reply brief. Docket 52 at 18-19. Accordingly, the court will not consider CNH's argument because North Star has had no opportunity to respond. *Bearden v. Lemon*, 475 F.3d 926, 930 (8th Cir. 2007) (quoting *Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 n.1 (8th Cir. 2003)) ("[I]t is well settled that [the Eighth Circuit Court of Appeals] do[es] not consider arguments raised for the first time in a reply brief."); *Johnson v. Berry*, 171 F. Supp. 2d 985, 990 n.3 (E.D. Mo. 2001) ("The Court does not consider an argument made for the first time in a reply, to which the opposing party has no opportunity to respond."); *McCullough v. Aegon USA, Inc.*, No. 06-CV-0068-LRR, 2008 WL 268895 at *7 (N.D. Iowa Jan. 29, 2008) ("By raising such arguments for the first time in the Reply, Plaintiff denied Defendants an opportunity to respond to the allegations.").

### IV. Summary Judgment Motion

CNH contends it is entitled to summary judgment because North Star is unable to prove the existence of a design defect in the combine. Because

Wingfield's testimony is sufficient to prove the existence of a design defect and his testimony is admissible, CNH's motion for summary judgment is denied.

## CONCLUSION

The court denies CNH's motion to exclude Wingfield's testimony. In light of that decision, and having reviewed CNH's motion for summary judgment in the light most favorable to the nonmoving party, the court finds that genuine disputes of material fact exist with respect to each claim. Therefore, it is

ORDERED that CNH's motion to exclude North Star's expert witness (Docket 30) is denied.

IT IS FURTHER ORDERED that CNH's motion for summary judgment (Docket 30) is denied.

Dated September 12, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE